IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE TROUTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-293 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 28th day of March, 2007, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Commissioner's decision of November 11, 2005, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence.

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her application for disability April 26, 2004, alleging a disability onset date of October 7, 2003, due to back pain and emotional problems. Plaintiff's application was denied initially. At plaintiff's request, an ALJ held a hearing on September 20, 2005, at which plaintiff, represented by counsel, appeared and testified. On November 11, 2005, the ALJ issued a decision finding that plaintiff is not disabled. On January 13, 2006, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 33 years old at the time of the ALJ's decision

AO 72
(Rev. 8/82)

and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has a high school education and past relevant work experience as a shoe retailer, but she has not engaged in any substantial gainful activity since her alleged onset date. For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient coverage to remain insured through September of 2008.

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of a herniated disc at the L5 level, depression, anxiety and obesity, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ also found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of her impairments. (R. 23). Taking into account plaintiff's age, education, work experience and residual functional capacity for light work with the enumerated restrictions, a vocational expert testified that plaintiff could perform her past relevant work as a shoe retailer. Alternatively, based on a residual functional capacity for sedentary work with the identical restrictions, the

vocational expert identified numerous categories of jobs which plaintiff could perform, including addresser/router and table worker. Relying on the vocational expert's testimony to his alternative finding, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(1)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[1] See 20 C.F.R. §§404.1520; Newell

---

[1] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ improperly evaluated the medical evidence and failed to give controlling weight to the opinions of her treating physicians; and, (2) the ALJ did not provide plaintiff a "full and fair hearing" due to alleged bias. After reviewing the ALJ's decision and the record, the court finds that this case must be reversed and remanded for additional consideration of the medical evidence and plaintiff's credibility and for clarification of the residual functional capacity finding.

First, the ALJ must re-evaluate the medical evidence and explain in more detail his rationale for rejecting or discounting the medical evidence he finds not credible. It is axiomatic in social security cases that, although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Where the ALJ fails to consider and explain his reasons for discounting all of the relevant evidence before him, he has not met his responsibilities under the Act and the case must be remanded with instructions "to review all of the pertinent medical evidence, explaining any conciliations and rejections." Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ did not adequately consider and explain his reasons for rejecting or discounting all of the relevant evidence. The record in this case contains a plethora of medical evidence from treating physicians, consultative examiners and state agency reviewing physicians. Plaintiff was treated on a fairly regular basis by Dr. Freenock, Dr. McVay, Dr. Shah and Dr. Dixon, and was examined by Dr. Hallstrom for her back pain, underwent a psychological evaluation by Dr. Fernan and had a consultative examination performed by Dr. Moncman.

However, with the exception of one report from Dr. Dixon opining that plaintiff could not work on a sustained basis, which the ALJ found was not supported by minimally positive findings, the ALJ failed to address any other specific report from any specific physician. Instead, the ALJ simply made conclusory statements such as the opinion of Dr. Moncman, a consulting physician, "has been given greater weight than that of the State Agency, a non-examining source". (R. 24). Later, the ALJ reduces the entire medical record into one summary paragraph by stating that "greater weight was given to opinions of treating sources", "[m]edium weight was placed upon reports from examining sources", and that "the report from the State Agency . . . was given lesser weight as a report from a non-examining, non-treating source." (R. 26).

It is not possible for the court to conduct meaningful judicial review of the ALJ's evaluation of the medical evidence in light of the dearth of explanation and rationale. Although the

ALJ states that, with the notable exception of Dr. Dixon's opinion that plaintiff cannot perform sustained work, he gave "greater weight to the reports of treating physicians", there is evidence in some of those other reports which arguably could support a disability finding. Although the Commissioner sets forth various reasons in its brief why these reports may not be entitled to great weight, the court can only analyze the ALJ's decision itself and determine if it is supported by substantial evidence and cannot uphold an ALJ's decision based on after-the-fact arguments raised by the Commissioner on judicial review.

On remand, the ALJ must specifically address all of the relevant medical evidence and explain his reasons for rejecting or discounting any particular evidence which he believes is entitled to less weight. The ALJ, of course, does not have to accept the opinions from any particular medical source, so long as he adheres to the standards set forth in the regulations for evaluating medical evidence, 20 C.F.R. §404.1527(d)(2), and gives some indication of the evidence he rejects and his reasons for rejecting it.

In addition, on remand the ALJ must clarify his residual functional capacity finding, as well as incorporate into it all restrictions and limitations supported by the evidence of record. The ALJ's residual functional capacity finding is unclear in this case.  Initially, the ALJ found that plaintiff retains the residual functional capacity to engage in light work activity with

certain limitations.[2] (R. 23).

Later, the ALJ acknowledges that he "wrestled" with his residual functional capacity assessment because of what he perceived to be plaintiff's "exaggeration and outright manipulation" of the workers' compensation and social security systems. He writes that a residual functional capacity finding of light work is proper if "all exaggerated symptoms are ignored and only solid objective evidence" is considered, but that a finding of work at the "sedentary level with a limitation to simple, routine, repetitive work is proper if complaints of pain, obesity, and depression are credible all the time." The ALJ determined that he believed that work at the light exertional level is most credible, but also stated that if the Appeals Council should re-weigh the medical evidence and find that plaintiff is limited to sedentary work with a limitation to simple, routine, repetitive work is more credible, that there still are jobs which the plaintiff can perform with that residual functional capacity. (R. 26).

There are two problems with the ALJ's residual functional capacity finding. First, the ALJ's residual functional capacity finding fails to take into account all of plaintiff's impairments

---

[2] Specifically, the ALJ found that plaintiff's ability to engage in the full range of light work is limited to occasional climbing of ramps and stairs and stooping and a prohibition from crawling and climbing ladders, ropes and scaffolds, occasional pushing and pulling with the lower extremities to include the use of pedals, she must avoid even moderate exposure to cold temperature extremes and extreme wetness/humidity and she may not be exposed to dangerous machinery and unprotected heights.

and limitations as supported by the record. In particular, the ALJ's finding does not account for any limitations resulting from plaintiff's depression. The ALJ briefly discussed the results of plaintiff's consultative psychological examination in his decision. Specifically, he noted that Dr. Fernan found that plaintiff was verbally aggressive, showed poor social judgment, and exhibited extremely poor concentration. (R. 24). The ALJ did not discuss the weight that he was giving to this report or whether he rejected it or discounted it, but the ALJ did specifically find at step 3 of the sequential evaluation process that the evidence establishes that plaintiff has "moderate difficulties maintaining concentration, persistence or pace" and that by moderate limitations he means that plaintiff is limited to "simple, routine, repetitive work". (R. 22).

However, the ALJ did not include any limitations arising from plaintiff's depression in his residual functional capacity finding, not even so much as a "limitation to simple, routine, repetitive work". Later in his opinion, he seemed to indicate that such a limitation would only be applicable to his alternative finding that plaintiff could perform sedentary work. Despite the ALJ's statement that even with such a limitation at the sedentary work level there are jobs that plaintiff could perform, a review of the hearing transcript reveals that in his alternative hypothetical to the vocational expert restricting plaintiff to sedentary work, he did not include a limitation restricting her to simple, routine, repetitive work. (R. 73-82).

On remand, the ALJ must clarify his residual functional capacity finding with regard to limitations arising from plaintiff's depression. Unless he determines that Dr. Fernan's report is not entitled to weight under the appropriate standards for evaluating medical evidence, he must include in his residual functional capacity finding, and hypothetical to the vocational expert[3], any limitations resulting from plaintiff's depression, in particular difficulties in concentration.[4]

The second problem with the ALJ's residual functional capacity is that it appears to have been colored by improper considerations in assessing plaintiff's credibility. Although the court does not necessarily agree with plaintiff's contention that the ALJ was biased against her because of a pending workers'

---

[3] It is well-settled that a vocational expert's response to a hypothetical that does not reflect all of a claimant's impairments that are supported by the record cannot be considered substantial evidence supporting a step 5 finding of not disabled. Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004).

[4] The ALJ should also be mindful that a limitation to "simple, routine, repetitive" work may not necessarily be sufficient to account for plaintiff's difficulties. In Burns v. Barnhart, 312 F.2d 113, 123 (3d Cir. 2002), the Third Circuit noted that a limitation restricting Burns to "simple, repetitive one, two-step tasks" was not sufficiently descriptive to convey the deficiencies resulting from Burns' mental impairments, distinguishing Howard v. Massanari, 255 F.3d 577 (8th Cir. 2001), in which the court concluded that the phrase "simple, routine, repetitive work" was sufficient to account for the claimant's limitations where that claimant's deficiencies were solely in the areas of "concentration, persistence or pace." If the ALJ finds on remand that plaintiff's difficulties arising from depression are solely in the areas, of concentration, persistence or pace, then a limitation to "simple, routine, repetitive" work may be sufficient. Otherwise, more specific limitations may be necessary.

compensation case, the court is somewhat troubled by the ALJ's rhetoric in discussing plaintiff's credibility. The ALJ referred to unspecified treating sources as "doctors for hire", speculated that plaintiff "deliberately misled her doctors" to develop her workers' compensation case and that plaintiff "overstated her physical and mental symptoms for financial purposes" and that she engaged in "outright manipulation" of the workers compensation and social security systems.

The court does not believe that these types of speculative accusations have any place in the determination of plaintiff's claim for disability. On remand, the ALJ should re-evaluate plaintiff's credibility under the appropriate law and standards, 20 C.F.R. §§404.1529(c) and SSR 96-7p, and should assess plaintiff's credibility based only upon the appropriate factors set forth in the regulations and SSR 96-7p while refraining from interjecting his own perceived and speculative views as to plaintiff's motivation for filing her claim. Plaintiff's claim should be judged solely on its merits and the objective facts. Although the ALJ ultimately may reject a plaintiff's subjective testimony regarding pain and its limitations if he does not find it credible, he must explain why he is rejecting that testimony and must do so for legitimate reasons. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999).

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Querino Torretti, Esq.
600 Main Street
P.O. Box 218
Reynoldsville, PA 15851

Lee Karl
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)